IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| Justin Spiehs | | Case No.   5:24-cv-04016-JAR-BGS |
| | Plaintiff | |
| v. | | |
| | | Sworn statement |
| Kathleen Morgan *et al* | | |
| | Defendants | |

Dr. Justin Spiehs Sworn Statement

1.  My name is Dr. Justin Spiehs.  I have a doctorate in lifespan human development and a master's degree in marriage and family therapy, both from Kansas State University, and a bachelor's degree in human services with emphasis in addiction counseling from Washburn University. I previously worked in Kansas as a licensed marriage and family therapist and licensed addiction counselor. I was an assistant professor of family and human services at Washburn University. I served honorably for 9 years in the U.S. Navy submarine service.

2.  I began reporting on the City of Lawrence as a citizen journalist in April 2022.

3.  I use my encounters, as well as others, to report on my observations, and at times question other individuals in real time for reporting purposes.  I publish using YouTube as my media.

4.  The Public Library of the City of Lawrence (the Library) is a municipal public body and a quasi-political subdivision of the City of Lawrence, Kansas.

5.  The Board of Directors of the Free Public Library of the City of Lawrence, Kansas, is a governing body appointed by the Lawrence City Commission and is funded by the City of Lawrence under Charter Ordinance No. 16.

6.  I was present at the Library of the City of Lawrence Kansas on May 17 2023, and June 11, 2023, in which I took videos which are stipulated to as admissible in the Pretrial Order.

7.  Kathleen Morgan is Director of Development & Community Partnerships for the Lawrence Public Library and was present and participated with the other defendants in my removal from the Library on May 17, 2023.

8.  Marc Veloz was a Community Resource Specialist for the Library and was present and participated with the other defendants in my removal from the Library on May 17, 2023.

9. Sara Mathews, Heather Kearns, Karen Allen, Tristan Star, Polli Kenn, Lauren Taylor were all Library employees present and participating in my removal from the Library on May 17, 2023, June 11, 2023, or both dates.

10. The Library had and continues to have a "Behavior Policy" which deems "unacceptable behavior in the Library" as "Using obscene, threatening, harassing, or abusive language or gestures – including abusive language and gestures directed at race, ethnicity, sexual orientation, ability, gender and identity, and other personal characteristics."

11. It also deems unacceptable behavior as "Soliciting, panhandling, or canvassing in the Library (except as expressly approved by the Library).

12. On May 17, 2023, the public was invited to an event hosted by the Library about the topic of "gender markers" related to legal documents. I attempted to enter the Library with a sign that read "If you have a dick then you are not a chick."

13. My friend attempted to enter the library with a sign that stated "God didn't get it wrong. There are only 2 genders" with male and female gender signs drawn on it.

14. I did not plan on verbally communicating anything but rather to sit silently while displaying those signs. Upon entry into the library, I and my friend initially stood silently at the entrance of the Library auditorium in which the event was to be held.

15. When the Library auditorium doors opened for the public, I attempted to enter but then was confronted by library employee Marc Veloz. Mr. Veloz attempted to stop me from entering.

16. The doors to the auditorium were then locked from the outside with attendees of the event inside the Library auditorium further preventing my entry. Heather Kearns, Tristan Star, Marc Veloz, Kathleen Morgan, Lauren Taylor, Sarah Mathews, and Karen Allen library employees gathered around me and my friend while they were physically preventing me from entering the Library's auditorium.

17. I witnessed these same individuals permit a woman to prohibit me from entering the Library meeting room. The woman called the Lawrence City Police and complained that I was violating the law.

18. Those named individuals told me that I could not enter the meeting with my sign. Veloz told me that my signs made other individuals feel "uncomfortable."

19. Kathleen Morgan and Heather Kearns told me that I could not enter the Library room because it was a private event. When Lawrence police arrived Kathleen Morgan told the officer that I was to be removed from the Library because of my signs. I was forced to leave the Library by these individuals using the Lawrence City police.

20.     On June 11, 2023, the Library hosted "Deja's Reading Rainbow" which stated "Deja Brooks, a local drag artist, will read and perform at the free event, set for 3:30 p.m. Sunday, June 11 at the Lawrence Public Library. The event will last about an hour, according to the Facebook event page. Deja's Reading Rainbow is "a story time about love and friendship, being different and belonging, being unique and being accepted, colors, rainbows, and, of course, fun," according to the event page. The event is open to all ages, according to the library."

21.     I and three of my friends planned to attend the event while displaying our signs without any verbal communications.

22.     We entered the Library with signs. My sign stated, "This is Wrong" and "Stop Grooming Kids." Another sign of one of my friends stated, "Deja is a Soul-less Parasite."

23.     When I entered the Library, I was again confronted by Tristan Star . He told me that "we've been over this before with the signs" and he insisted that I could not attend the event if a disturbance was made. I told him that I was not going to be a disturbance. I waited outside the same Library auditorium as the May 17th event.

24.     While I was waiting for the doors to open, Tristan Star confronted me telling me "I know you want to be internet famous and all that" but that he wasn't going to allow the signs like that which "make people feel uncomfortable."  He told me that "we aren't a public library technically."

25.     Tristan Star, Karen Allen, Polli Kenn, and Phillip Howard stood together reviewing some paperwork. When they had finished reviewing the paperwork, Karen Allen, Polli Kenn, and Phillip Howard all hugged. When the doors to the event were opened, I entered with my signs and proceeded to sit together as a group.

26.     As we sat waiting for the start of the event Tristan Star and Karen Allen continued to group with the other employees looking at a paper. I entered the auditorium. I had placed my signs in the purse of one of my friends. Then when the event started we all quietly and silently displayed our signs.

27.     The performer going by the stage name "Deja Brooks" demanded that we put our signs down. In response, Tristan Star again confronted me and claimed that I was being disruptive when I hadn't said anything and was sitting calmly and quietly making no movements.

28.     The individuals I named previously were close by and watched while this occurred. Tristan Star told me I had to leave or he would call the police and have me cited for trespass.

29.     Up to that point neither myself nor my friends had said anything.

30. Then two Lawrence City police officers entered the Library auditorium.

31. Because of the demands of Tristan Star and Karen Allen, I felt I no choice under threat of arrest by police but to leave involuntarily.

32. I left under duress and threat of arrest.

33. Tristan Star also told my friends that because they were sitting next to me they too were being required to leave. They told Star that they didn't have any signs displayed. Star change his mind and permitted them to stay.

The Free Speech Activities Policy of the Library states that

> 1. Free speech activities include, but are not limited to: holding or carrying signs, protesting, using expressive conduct or speech, distributing literature, acting as a public speaker, panhandling, and requesting signatures/donations/contributions.
> 2. Persons engaging in any free speech activities are referred to in this policy as "speakers."
> 3. "Sponsors" are a group(s) or individual(s) that reserve space in the library under the Reservable Room Policy and/or Public Event Policy.
> 4. A "designated partner" is an individual(s) or organization(s) who co-sponsors or is affiliated with a sponsor that reserves space in the library. The sponsor must identify a designated partner on promotion material to exempt their free speech activities from this policy.
>
> 1. The Library is a limited public forum dedicated to the peaceful study and enjoyment of visitors free from disturbance and unauthorized free speech activities by others.
> 2. Therefore, the Library will not permit free speech activities inside the Library that would interfere with study and enjoyment of visitors of the Library.
> 3. This policy does not apply to sponsors and their designated partners who reserve space in the library for programming under the Reservable Room Policy or Public Event Policy.
> 4. For information on free speech activities at library-sponsored events, please see the Public Event Policy.
> 5. For information on free speech activities at non-library sponsored events, please see the Reservable Room Policy.
> 6. For the safety and protection of speakers, library staff, and library patrons, speakers are permitted to engage in free speech activities outside of the Library in the public right-of-way. At no time is a speaker permitted to block or otherwise prevent ingress and egress from the Library.
> 7. Posters, pamphlets, or other printed information may not be placed on or attached to the buildings, walls, columns, lights, or other structural/ornamental features of the Library.
> 8. Aggressive or harassing behavior in violation of the law is strictly prohibited. If a speaker is in violation of the Policy, library staff must: (i) provide an oral warning to the speaker identifying the specific Regulations(s) the speaker has violated and

ask the speaker to comply with the Regulation(s); (ii) if the speaker has been warned and does not comply, ask the speaker to leave the Library's premises; and (iii) if the speaker has been warned, the speaker has been asked to leave, and the speaker does not leave, notify police that the speaker is trespassing and advise the speaker that police have been notified. As soon as possible after the violation occurs and no later than the end of the following business day, library staff must document the violation in writing for inclusion in the Library's incident tracking database.

34. The "incident tracking database" the Library refers to in its Speech Activities policy uses a software program called the "Patron Incident Tracking System" which I refer to as "PITS." I did not know it at the time but when I made open record requests of the Library I discovered that the Library, unknown to the individual, places individuals in this PITS database meting out bans to the individual even though the individual doesn't know it.

35. The Library claims the PITS database is not subject to Kansas Open Records law and claim they are secret.

36. The Library had security video footage of all of the incidents I describe in this sworn statement but failed to retain those records even after this lawsuit was filed.

37. Brad Allen, who is the director of the Library, stated under oath that video recordings are not retained unless they involve a "security risk or criminal investigation." The Library did not retain any video recordings of me which means they did not consider anything I did to be a security risk or criminal.

38. The PITS database lists me each time as a "Perpetrator" and then shows where I have been "suspended" meaning the Library has no trespassed me even though it never provided me notice of this punishment or why. The database also provides for "Victims" but it never claimed there was any so-called "victim" to any of my actions.

39. The PITS database provides for a "Behavior Matrix" which provides for an incremental increase in adverse consequences for behavior the Library deems unacceptable. For example, I was placed in the PITS database for purportedly "disregarding" the "direction of staff." When I am placed in the PITS database and given a "suspension" it means I am banned – I am required to leave the Library or remain off Library premises until the duration of the ban ends. In all cases in which I was placed in the PITS database, I had no notice that I was placed in the PITS database, no notice as to why, no notice as to the consequence and no notice as to how to appeal these consequences.

40. The PITS database provides for characterizing an individual's actions as "Behavior that is disruptive to others use of the library" but no one from the Library ever characterized my actions that way. I was never disruptive to anyone's use of the Library.

41. According to the Library's PITS database which was provided me in discovery, I was placed in it first on November 25, 2024, (incident 217) by Tristan Star using the description "disregarding the reasonable direction of staff." Unknown to me, according to the PITS database, I was placed in suspension. Here is what actually happened on November 25, 2024.

42. On November 25, 2024, I entered the Library and held up an 11x 16 inch paper saying "Free Speech Died Here Ask Me How" while silently standing. Another individual, Michael Eravi, also came in and displayed a print out of the Library's Free Speech Activity Policy on a 8 ½ x 11 inch size piece of paper. The Library facilities manager Jon Ratzlaff, told me to stop displaying my paper but not Mr. Eravi.

43. Ratzlaff told me to leave the library. Ratzlaff called the police. When they arrived they told me Ratzlaff was instructing me to leave because of my piece of paper.

44. But Ratzlaff did not tell Michael Eravi that he had to leave. The police officer said he would write a report to be sent to the city prosecutor.

45. On November 26th, 2024, I returned to the Library and displayed the same piece of paper that I had displayed November 25th. I also wore a shirt with the same message "Free Speech Died Here Ask Me How." Tristan Star and Library employee Josh Lyles confronted me and they told me to stop displaying the piece of paper else they would call the police to have me removed. Three Lawrence police officers arrived and confronted me about the piece of paper and told me to leave the Library. No one took any issue with me displaying the same message on my shirt.

46. I was placed in the PITS database by Darin McQueen again (without me knowing that) and given another ban ("suspension") from the Library.

47. On December 1, 2024, David Basten entered carrying a paper displayed saying "This public library should be defunded for constitutional violations!" Basten was confronted by Tristan Star but allowed to stay and display his paper. Dr. Spiehs later entered carrying a blank piece of 22 x 28 inch cardboard. Unknown to me, I was again placed in the PITS database as a perpetrator for disregarding direction of staff. According to the PITS database, Jon Ratzlaff didn't bother to talk to me because he claimed "since we have twice told him that Free Speech Activities were not allowed, we declined to tell him a third time" and that I knew I "can't have a sign." Brad Allen called the police. The officer told Allen he would not enforce the Library policy as requested by Allen. Allen then attempted to have the officer charge me with harassment because of my blank cardboard. The officers refused and left.

48. On December 9, 2024, the library had transgender and LGBTQ pride flags displayed inside the library. I entered the library that day and silently stood displaying a "Don't Tread on Me" flag. I was informed by the Library security guard Darin McQueen telling me that I was not permitted to display my flag because it was considered both, in his words, "expressive conduct or speech" and "protesting". At the same time, Michael Eravi stood with a LGBTQ pride flag draped around his

shoulders. When asked, McQueen stated that Mr. Eravi was not violating the free speech activities policy with his displayed flag because of how he was holding the flag compared to how I held my flag. McQueen said he was putting me in the PITS database as a perpetrator.

49. On March 27, 2025, I attended a public event at the library carrying messages written on a piece of cardboard. One stated "This library uses LPD violence to stop free speech." I entered the library with these messages displayed and I attended the entirety of the event without incident. When the event ended I exited the meeting room and asked Jon Ratzlaff if I was going to be placed on the PITS database again for having these messages inside the library. He wanted to talk outside of the library to answer my question and so we did but he did not tell me he was trespassing me. Ratzlaff then falsely stated that I had not displayed the messages inside the library and so therefore I wouldn't be placed on the incident list this time. I then entered back into the library and stood silently displaying my messages again. Ratzlaff followed me back into the Library and immediately confronted me saying I couldn't display my messages and told me he wanted me to leave the library. He stated if I did not leave he would call the police which he did. He told the police over the phone that my library access had been suspended. The police declined to enforce the Library's free speech activities policy and they did not physically arrive to the Library. I left when the Library closed for the day.

50. On March 31, 2025, I entered the Library to attend an event. I carried a message written on a piece of cardboard stating "Trump is right: if you are born with a dick then you are not a chick." Upon entering the Library I was immediately confronted by Library employee McQueen who told me for the first time that I had been banned for a week from the Library. He said that if I didn't leave the Library the police would be called and I would be banned from the library for an additional 90 days. I asked to speak his supervisor or someone from upper management or to get a copy of this ban in writing. He refused both requests and called the police. Police showed up and initially stated I was free to be inside the Library. A few minutes later Brad Allen confronted me informing me I was now banned from the library for 90 days. I was put into the PITS database again.

51. As I have before, I again intend on returning to the Library carrying and displaying the same or different messages on flags, paper, and cardboard. I intend to return to do things that might violate all of the prohibitions of panhandling, signs, protest, evangelize, demonstrate, things that might give me attention and audience in the Library, ask for signatures, donations, and contributions, things that might distract or otherwise interfere with staff and individuals so-called "enjoyment" in this public venue, as well as distribute literature in that manner.

I state that I am familiar with the above and that it is true and made under penalty of law pursuant to K.S.A. 53-601 on May 23, 2025

*[signature]*